UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID GONZALEZ,

        Plaintiff,

   v.

DR. PHUC LAM,

        Defendant.

Case No. 18-cv-07508-YGR (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This suit was reassigned from a magistrate judge to the undersigned judge. Dkt. 19. Plaintiff, a state prisoner incarcerated at the California Training Facility ("CTF"), brings the instant *pro se* civil rights action under 42 U.S.C. § 1983, alleging an Eighth Amendment claim for deliberate indifference to serious medical needs by Defendant Dr. Phuc Lam, a CTF physician. Plaintiff seeks declaratory and injunctive relief as well as monetary and punitive damages. He has also requested for appointment of counsel. Dkt. 1 at 13.[1]

Magistrate Judge Kandis A. Westmore screened Plaintiff's complaint under 28 U.S.C. § 1915A(a), and found that he stated a claim under the Eighth Amendment for deliberate indifference to serious medical needs. Dkt. 7 at 2. Magistrate Judge Westmore also ordered Defendant to file a dispositive motion no later than thirty days from the date his answer was due. *Id.* at 3. Defendant subsequently declined magistrate jurisdiction, and, as mentioned, this action was reassigned to the undersigned judge. Dkts. 17, 19. Defendant then twice moved to change the time to file a dispositive motion, both of which the Court granted. Dkts. 21-22, 24-25.

The parties are presently before the Court on Defendant's Motion for Summary Judgment. Dkt. 26. Defendant moves for summary judgment: (1) on Plaintiff's Eighth Amendment claim against Defendant on the grounds that (a) Plaintiff has failed to exhaust administrative remedies,

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

as required by the Prison Litigation Reform Act ("PLRA"), (b) even if he did exhaust, the undisputed evidence shows (i) Plaintiff did not have a serious medical need and (ii) Defendant was not deliberately indifferent to Plaintiff's medical needs, and (c) based on qualified immunity; and (2) on Plaintiff's request for injunctive relief because it is moot. *Id.* at 6. Plaintiff has filed an opposition, and Defendant has filed a reply. Dkts. 31, 32. Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendant's motion.

## II.   FACTUAL BACKGROUND[2]

### A.   Plaintiff's Version

In his complaint, Plaintiff alleges that during the time frame he was under the care of Defendant, who was Plaintiff's primary care physician ("PCP"), Plaintiff suffered from the following conditions: "(1) vision loss; (2) explosive headaches; (3) severe dizziness; (4) blurry vision; (5) double-vision; (6) tunnel[]-vision; and (7) emotional and psychological trauma resulting from said injuries – and deliberate indifference in response to those injuries." Dkt. 1 at 7. Plaintiff claims that on June 29, 2017,[3] Defendant refused to refer Plaintiff to an "eye specialist," even though Defendant was "aware that [Plaintiff] was in fact in serious need of specialist care." *Id.* Plaintiff also claims that Defendant did not prescribe adequate medication for Plaintiff's vision conditions other than "over-the-counter eye drops" due to the following reasons:

> (1) It was [Defendant's] practice of not believing prisoners when they describe their symptoms; and

---

[2] This Order contains a few acronyms. Here in one place, they are as follows:

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| CTF | California Training Facility |
| IMSP&P | Inmate Medical Services Policy and Procedure |
| PCP | Primary Care Physician |
| PLRA | Prison Litigation Reform Act |
| UCLA | University of California, Los Angeles |

[3] The Court notes that in his complaint, Plaintiff originally alleged that the date of the encounter with Defendant was on April 23, 2018 when Defendant allegedly refused to refer Plaintiff to an eye specialist, or provide him with medication other than over-the-counter eye drops. *See* Dkt. 1 at 8-9. However, during his deposition, Plaintiff testified that the April 23, 2018 date should have actually been *June 29, 2017* instead. Dec. 24, 2019 Nygaard Decl. ¶ 2, Ex. A (Pl.'s Dep.) at 88:4-25, 89:1-3.

> (2) CTF's blanket policy (i.e., the Inmate Medical Services Policy and Procedure [IMSP&P]), does not allow for medical treatment and/or medications that are not "formulary" to be provided to prisoners until their health deteriorates beyond a certain level – i.e., Plaintiff must first become legally blind <u>before</u> meaningful medications and specialists are recommended and/or provided.

*Id.* at 7-8 (emphasis in original).

Plaintiff claims that he filed a 602 inmate appeal, log no. CTF-HC-18000877, against Defendant alleging:

> (1) deliberate indifference in medical care; (2) a deliberate disregard for [Plaintiff's] deteriorating eyesight; (3) deliberate indifference to the pain [Plaintiff] was experiencing; (4) providing no treatment at all; and (5) utilizing a blanket policy (IMSP&P) to deny medical treatment.

*Id.* at 8. Plaintiff claims that his 602 appeal was denied at both the institutional level of review and the headquarters' level of review. *Id.*

In his complaint, which is dated November 26, 2018, Plaintiff claims that he continues to suffer from serious vision loss causing him to bump into people and objects. *Id.* at 9. He further claims that his vision impairment prevents him from reading or focusing in classes he is taking. *Id.* In sum, Plaintiff alleges that Defendant is deliberate indifferent to his serious medical eye conditions by failing to refer him to an eye specialist and failing to prescribe effective medication.

### B.   Defendant's Version

In the motion for summary judgment, Defendant's counsel has outlined Defendant's involvement with Plaintiff's eye care and treatment. *See* Dkt. 26 at 15-18. The Court notes that Defendant has supported the motion for summary judgment with expert testimony. *See* Gupta Decl. Specifically, Defendant presents a declaration from a medical expert, Dr. Shalu Gupta, who obtained her B.A. in biochemistry at University of California, Los Angeles ("UCLA"), obtained her medical degree at UCLA School of Medicine, and now is a board-certified Comprehensive Ophthalmologist. *Id.* ¶¶ 4-6. Dr. Gupta states that she has been asked "to review this matter and express [her] opinions, based on [her] education, training, and experience, as to whether [Defendant's] care and treatment of [Plaintiff's] allege vision conditions was medically appropriate." Gupta Decl. ¶ 3. Dr. Gupta states that in formulating her opinion, she reviewed the

following documents: (1) the written transcript (and portions of the video) of Plaintiff's Sept. 9, 2019 deposition (Dec. 24, 2019 Nygaard Decl., Ex. A (Pl.'s Dep.)); (2) the Duty Statement for Physician & Surgeon position at the CTF (Lam Decl., Ex. A at DEF0001-2); and (3) Plaintiff's medical records retained by the CDCR from January 1, 2011 to May 4, 2019 (Lam Decl., Ex. A at DEF0003-DEF0976). Thus, a large portion of Defendant's version of the factual background is taken from Dr. Gupta's summary of Plaintiff's medical records, *see* Gupta Decl. ¶¶ 8-18, as well as Defendant's declaration, *see* Lam Decl.

Before Defendant became Plaintiff's PCP, Plaintiff underwent surgery on April 9, 2014, to remove a pterygium from his left eye. Gupta Decl. ¶ 8; Lam Decl. ¶ 5, Ex. A at DEF0185-86. A pterygium is a degenerative growth of the conjunctiva (the clear vascular tissue that lines the inside of eyelids and covers the white sclera of the eyeball) onto the surface of the cornea. Gupta Decl. ¶ 8. Pterygium removal is a minimally-invasive outpatient surgery that involves the excision of the pterygium from the eye. *Id.* At a post-operative follow-up appointment a month later, the ophthalmologist noted that Plaintiff's surgery yielded an excellent result. *Id.* ¶ 8; Lam Decl., Ex. A at DEF00205. Plaintiff also later told another doctor on August 22, 2014, that he was happy with the results of the surgery, and the doctor noted that the pterygium site had healed well. Gupta Decl. ¶ 8; Lam Decl., Ex. A at DEF0226.

Defendant's initial encounter with Plaintiff was on January 26, 2015, to address an issue unrelated to the allegations in this complaint. Lam Decl. ¶ 6, Ex. A at DEF0258-61. Plaintiff did not complain to Defendant of any ocular-related problems, nor were any vision issues readily apparent to Defendant. *Id.* Plaintiff also told Defendant that he had not been experiencing any dizziness or headaches. *See id.* Defendant then saw Plaintiff three times in June and August of 2015. *Id.* ¶¶ 7-9, Ex. A at DEF0284-85, DEF0294-95, DEF0298-300. At none of these appointments did Plaintiff complain of any vision problems, nor were any vision issues readily apparent to Defendant. *See id.*

It was not until December 1, 2015, that Plaintiff first mentioned any eye-related issues to Defendant. Lam Decl. ¶ 10, Ex. A at DEF0319-22. During this appointment, Plaintiff reported mild discomfort in his left eye where he had the pterygium excision. *Id.*, Ex. A at DEF0319-22.

4

1   Plaintiff said that the discomfort was worse with sun exposure, and he reported that he did not
2   have any eye drops. *Id.*, Ex. A at DEF0320. Defendant examined Plaintiff's left eye, and saw no
3   visible signs of irritation. *Id.* Both of Plaintiff's pupils were equally reactive to light and
4   accommodation, and his extraocular movements were intact, which indicated to Defendant that
5   there was no sign of nerve damage. *Id.* ¶¶ 10, 16. Defendant prescribed Naphcon-A eye drops to
6   relieve the discomfort. *Id.* ¶ 10, Ex. A at DEF0320, DEF0322. Naphcon-A is used to relieve eye
7   redness, puffiness, itching, and watering that commonly occur with allergies. *Id.* ¶ 10.

8   A month later, Defendant requested that a nurse conduct a visual acuity test. *Id.* ¶ 11, Ex.
9   A at DEF0347. The test was performed on January 14, 2016. *Id.*, Ex. A at DEF0350. Without
10  glasses, Plaintiff's vision in both eyes was 20/25, in his right eye was 20/25, and in his left eye
11  20/30. *Id.* With glasses, Plaintiff's vision in both eyes was 20/20, in his right eye it was 20/20,
12  and in his left eye it was 20/20. *Id.* The test results indicated to Defendant that Plaintiff had good
13  vision, and Dr. Gupta concurs with such a finding. *Id.* ¶ 11; Gupta Decl. ¶ 10.

14  Defendant's next encounter with Plaintiff was on February 16, 2016. Lam Decl. ¶ 12, Ex.
15  A DEF0352-55. Defendant examined Plaintiff's eyes, and Defendant's only significant
16  observation was minimal to mild irritation related to Plaintiff's previous pterygium. *Id.*, Ex. A at
17  DEF0353. Plaintiff reported that he had run out of Naphcon-A eye drops, and Defendant renewed
18  the prescription. *Id.* According to Dr. Gupta, the renewal of these prescriptions was medically
19  appropriate because the eye drops would help to relieve Plaintiff's eye irritation. Gupta Decl.
20  ¶ 11. There was no indication to Defendant that any surgery was required, and Dr. Gupta agrees.
21  Lam Decl. ¶ 12; Gupta Decl. ¶ 11.

22  Six days later, Plaintiff was seen by a registered nurse for complaints of allergies. Gupta
23  Decl. ¶ 12, Ex. A at DEF0356-57. Plaintiff reported that he had been experiencing allergies for
24  months, with symptoms of sneezing and watery eyes. *Id.* Although the nurse noted that Plaintiff's
25  eyes, ears, and nose appeared clear, and that there were no abnormalities in Plaintiff's throat or
26  neck, the nurse prescribed chlorpheniramine. *Id.* Chlorpheniramine is an antihistamine used to
27  treat runny nose, sneezing, itching, and watery eyes caused by allergies. *Id.*

28  Defendant next saw Plaintiff five months later on July 27, 2016, when Plaintiff reported

recurrent mild irritation in both eyes, with more prominent irritation in his left eye where he had the prior pterygium excision. Lam Decl. ¶ 13, Ex. A. at DEF0361-65. Plaintiff stated that he had been running out of his eye drops, but otherwise felt fine, and reported no acute visual changes. *Id.* Defendant examined Plaintiff's eyes, and noted that both appeared unremarkable. *Id.* Defendant assessed that Plaintiff's eye irritation was caused by seasonal allergies, and prescribed chlorpheniramine, Naphcon-A eye drops, and Lacri-Lube (an ointment that protects against dry eyes). *Id.* According to Dr. Gupta, these prescriptions were medically appropriate. Gupta Decl. ¶ 13. Dr. Gupta added that these medications "would help to relieve [Plaintiff's] eye irritation, and there was no indication that [Plaintiff] needed to be seen by a specialist." *Id.*

Defendant renewed the Naphcon-A and Lacri-Lube prescriptions three times on August 22, 2016, September 6, 2016 and September 22, 2016. Lam Decl. ¶ 14, Ex. A at DEF0367, DEF509-10, DEF0527. Again, Dr. Gupta states that the continuation of these prescriptions was appropriate, and additional medications were not medically indicated. Gupta Decl. ¶ 14.

On April 24, 2017, Plaintiff was seen by Registered Nurse Shen in response to a health care services request form that Plaintiff had submitted. Lam Decl. ¶ 15, Ex. A at DEF0542. Plaintiff stated as follows: "I got [] prescription glasses last year, but it is too strong for me. I want to see optometry." *Id.* Plaintiff denied experiencing headaches or dizziness. *Id.* Nurse Shen consulted with Defendant, and Defendant submitted a referral for an optometry consultation. *Id.*, Ex. A at DEF0477, DEF0542-43. Dr. Gupta states that a referral to an optometrist was a medically-appropriate response to Plaintiff's complaints, and that "[t]here was no need for [Plaintiff] to be referred to another type of specialist, including an ophthalmologist, for this complaint." Gupta Decl. ¶ 15.

Defendant saw Plaintiff three days later on April 27, 2017, for the primary purpose of discussing his seasonal allergies. Lam Decl. ¶ 16, Ex. A at DEF0791-93. Plaintiff reported no complaints of headaches or acute visual changes to Defendant. *Id.*, Ex. A at DEF0791. Defendant examined Plaintiff's eyes, and noted that his extraocular movement was intact, which again indicated to Defendant that there was no sign of nerve damage. *Id.*, Ex. A at DEF0792.

Defendant's last encounter with Plaintiff was on June 29, 2017. *Id.* ¶ 17, Ex. A at

6

1   DEF0789-91.  Plaintiff had no complaints of headaches or acute visual changes.  *Id.*  Defendant

2   examined Plaintiff's eyes, and again noted that his extraocular movement was intact.  *Id.*, Ex. A at

3   DEF0792.

4          Shortly thereafter, Plaintiff was seen by an optometrist, Dr. Ottenbacher, on July 6, 2017.

5   *Id.*, Ex. A at DEF0562; Ottenbacher Decl. ¶ 5.  The only documented complaint was that Plaintiff

6   was experiencing blurry, uncorrected near vision.  Lam Decl., Ex. A at DEF0562.  No indication

7   exists of any complaints by Plaintiff of double vision, tunnel vision, eye pain, dizziness, or

8   headaches.  *Id.*  Dr. Ottenbacher noted that Plaintiff's extraocular movements were within normal

9   limits.  *Id.*  According to Dr. Gupta, if Plaintiff had been suffering from double-vision due to a

10  neurologic deficit, it would have been picked up with Plaintiff having abnormal extraocular

11  movements.  Gupta Decl. ¶ 18.  Dr. Gupta further pointed out that non-neurologic double vision

12  can be caused by uncorrected refractive error, cataracts, or ocular surface disease such as dry eyes,

13  which were all evaluated during this examination.  *Id.*  In addition, Dr. Gupta states that non-

14  neurologic double vision can be corrected with artificial tears, glasses, or cataract surgery

15  depending on the specific etiology.  *Id.*  Dr. Ottenbacher noted that Plaintiff had correctable

16  hyperopic refractive error and presbyopia[4], and prescribed glasses for correction.  Lam Decl., Ex.

17  A at DEF0562.  Dr. Ottenbacher also noted that Plaintiff had a moderate level of dry eyes, and

18  recommended continued treatment with Lacri-lube ointment.  *Id.*  According to Dr. Gupta, this

19  treatment plan was medically appropriate, and Plaintiff did not need to see another specialist,

20  including an ophthalmologist.  Gupta Decl. ¶ 18.  Dr. Gupta summarized her findings as follows:

> In sum, it is my opinion that the care and treatment [Defendant] provided [Plaintiff] for his ocular-related complaints was medically appropriate, and that [Plaintiff's] needs were addressed by both prescription of appropriate eye drops and referral to optometry.  There was no medical reason to prescribe any additional ocular medications.  There was no medical need for [Defendant] to refer [Plaintiff] to another specialist, besides the optometrist, which he saw.

25  Gupta Decl. ¶ 22.

---

[4] According to the Mayo Clinic, presbyopia is the gradual loss of your eyes' ability to focus on nearby objects.  Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/presbyopia/symptoms-causes/syc-20363328 (last visited Aug. 18, 2020).

7

United States District Court
Northern District of California

### III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Submitted by Defendant in support of the motion for summary judgment are his declaration (dkt. 27-3), excerpts from the transcript of Plaintiff's deposition (Dec. 24, 2019 Nygaard Decl., Ex. A), as well as declarations and all

8

1   attached exhibits from the following: Chief of the Health Care Correspondence and Appeals
2   Branch S. Gates; Dr. Gupta; Deputy Attorney General J. Nygaard (two declarations dated
3   December 24, 2019 and March 19, 2020); and Dr. J Ottenbacher. Dkts. 27-1 – 27-2, 27-4 – 27-5,
4   32-1.  Meanwhile, Plaintiff has filed his verified complaint (dkt. 1) and his verified opposition to
5   Defendant's motion (dkt. 31).  The Court will construe these filings as affidavits under Federal
6   Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific
7   facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir.
8   1995).  Finally, Plaintiff has submitted the entire transcript of his deposition, which is filed in
9   support of his opposition.  *See* Dkt. 31 at 12-50.

**IV.   DISCUSSION**

   **A.   Eighth Amendment Claim**

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under section 1983.  *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs."  *Estelle*, 429 U.S. at 104. "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'"  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104.  A "serious medical need[]" exists if the failure to treat a prisoner's condition could result in further significant injury or the "[u]nnecessary and wanton infliction of pain."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle*, 429 U.S. at 104), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

9

condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *McGuckin*, 974 F.2d at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

To satisfy the subjective element, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [the plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id*.

Here, as mentioned above, Plaintiff alleges that he was denied adequate medical care by Defendant for Plaintiff's serious medical eye conditions. Specifically, Plaintiff alleges that while Defendant was his PCP from 2015 through 2017, Defendant was deliberate indifferent by failing to refer him to an eye specialist and failing to prescribe effective medication. *Id.* at 7-9. Plaintiff further claims that as of the date of his complaint, November 26, 2018, he continues to suffer from serious vision loss causing him to bump into people and objects as well as prevents him from reading or focusing in classes he is taking. *Id.* at 9.

While Defendant argues that Plaintiff's eye conditions did not rise to the level of a serious medical need, *see* dkt. 26 at 12-14, they also argue that no evidence exists to show that Defendant acted with "deliberate indifference" to that need, *id.* at 14-18. The evidence shows that prior to Defendant assuming the role of Plaintiff's PCP, Plaintiff underwent surgery on April 9, 2014, to remove a pterygium from his left eye. Gupta Decl. ¶ 8; Lam Decl. ¶ 5, Ex. A at DEF0185-86. At a post-operative follow-up appointment a month later, the ophthalmologist noted that Plaintiff's surgery yielded an excellent result. *Id.* ¶ 8; Lam Decl., Ex. A at DEF00205. However, even after

such excellent results from surgery, Plaintiff alleges that during the time frame he was under Defendant's care, he suffered from the following conditions: "(1) vision loss; (2) explosive headaches; (3) severe dizziness; (4) blurry vision; (5) double-vision; (6) tunnel[]-vision; and (7) emotional and psychological trauma resulting from said injuries – and deliberate indifference in response to those injuries." Dkt. 1 at 7. Thus, the Court assumes arguendo that Plaintiff has serious medical eye conditions and, instead, it focusses on the subjective element of the deliberate indifference analysis.

Defendant argues that Plaintiff cannot establish that Defendant was deliberately indifferent to Plaintiff's serious medical eye conditions because "[t]here is no evidence that [Defendant's] decision to prescribe eye drops, and to refer [Plaintiff] to an optometrist were medically unacceptable." *Id.* at 18. Rather, Defendant alleges that "the evidence shows that the care and treatment that [Defendant] provided [Plaintiff] for his ocular-related complaints was medically appropriate, and that [Plaintiff's] needs were addressed by both prescription of appropriate eye drops and referral to optometry. *Id.* (citing Gupta Decl. ¶ 22). Specifically, Defendant argues that no medical reason existed to prescribe any additional ocular medications or to refer Plaintiff to another specialist, besides the optometrist. *Id.* Defendant asserts that Plaintiff's opinion that he needed to be seen by a different type of eye specialist is not supported by the medical evidence, and does not establish deliberate indifference. *Id.* (citing *Young v. Correction Corp. of America*, 2009 WL 1361443, *6 (D. Mont. 2009) ("The mere fact Plaintiff was seen by an optometrist and not an ophthalmologist and was not sent for an x-ray does not establish deliberate indifference to a serious medical need.")).

As mentioned above, a prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and a resulting harm. *McGuckin*, 974 F.2d at 1060. Such indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provided medical care. *See id.* at 1062.

11

To the extent that Plaintiff's claim amounts to medical malpractice or an allegation that Defendant was negligent in providing treatment, Plaintiff's allegations do not support an Eighth Amendment claim. *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Toguchi*, 391 F.3d at 1060; *McGuckin*, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea, and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain). Despite Plaintiff's claim that Defendant failed to provide adequate medical treatment for his serious medical eye conditions, Defendant has submitted a verified declaration from a medical expert, Dr. Gupta, indicating that Plaintiff's eye conditions and complaints were "addressed by both prescription of appropriate eye drops and referral to optometry" and that such treatment provided was "medically appropriate." *See* Feinberg Decl. ¶¶ 9-22.

In this case, the Court has outlined both Plaintiff's and Defendant's versions of the facts above. Viewing the evidence in the light most favorable to Plaintiff, the Court finds no genuine dispute exists as to any material fact relating to Plaintiff's claim of deliberate indifference based on Defendant's failure to provide adequate care for Plaintiff's serious medical eye conditions.

To the contrary, the record shows that Defendant provided adequate care to Plaintiff for his serious medical eye conditions by examining his eyes on multiple occasions and making treatment decisions based on these physical examinations. In fact, the undisputed record shows that Defendant physically examined Plaintiff's eyes for his various eye-related complaints a total of six times during a span of about a year and a half from December 1, 2015 through Defendant's last encounter with Plaintiff on June 29, 2017. Lam Decl. ¶¶ 10-13, 16-17. During the first appointment relating to eye conditions on December 1, 2015, Plaintiff reported mild discomfort in his left eye where he had the pterygium excision. *Id.* ¶10, Ex. A at DEF0319-22. Plaintiff said that the discomfort was worse with sun exposure, and he reported that he did not have any eye drops. *Id.,* Ex. A at DEF0320. Defendant examined Plaintiff's left eye, and saw no visible signs

12

of irritation. *Id.* Both of Plaintiff's pupils were equally reactive to light and accommodation, and his extraocular movements were intact. *Id.* From that December 1, 2015 visit, Defendant prescribed Naphcon-A eye drops to "relieve discomfort in [Plaintiff's] eyes," and continued to prescribe refills when Plaintiff ran out of this medication, which was "used to relieve eye redness, puffiness, itching, and watering that commonly occur with allergies." *Id.* ¶ 10. During the fourth visit on July 27, 2016, Plaintiff reported mild irritation in both eyes, with more prominent irritation in his left eye where he had the prior pterygium excision. Lam Decl. ¶ 13, Ex. A. at DEF0361-65. Defendant examined Plaintiff's eyes and assessed that Plaintiff's eye irritation was caused by seasonal allergies, and prescribed chlorpheniramine, Naphcon-A eye drops, and Lacri-Lube (an ointment that protects against dry eyes). *Id.* According to Dr. Gupta, these prescriptions were medically appropriate. Gupta Decl. ¶ 13. Dr. Gupta added that these medications "would help to relieve [Plaintiff's] eye irritation, and there was no indication that [Plaintiff] needed to be seen by a specialist." *Id.* During the following eleven months until Defendant's last encounter with Plaintiff on June 29, 2017, Defendant continued to renew Plaintiff's prescriptions for Naphcon-A and Lacri-Lube. *Id.* ¶ 14. Defendant claims that "[a]t no time during his care and treatment of [Plaintiff] did [Defendant] determine that [Plaintiff] needed to have additional medications to address his eye related complaints besides the ones that [Defendant] already prescribed." *Id.* ¶ 19.

Plaintiff was also examined by a nurse on one separate occasion—April 24, 2017—during which Plaintiff requested to see an optometrist. *Id.* ¶ 15. The nurse consulted with Defendant, who then submitted a referral for an optometry consultation. *Id.* Defendant states that "[a]t no time during [his] case and treatment of [Plaintiff] did [Defendant] determine that there was a medical reason for [Plaintiff] to be seen by a specialist for any eye-related issues, other than an optometrist to address his concerns regarding his prescription glasses." *Id.* ¶ 18. Three days later, on April 27, 2017, Defendant examined Plaintiff's eyes and noted that his extraocular movement was intact, which indicated to Defendant that there was no sign of nerve damage. *Id.* ¶ 16, Ex. A at DEF0792. During Plaintiff's last visit with Defendant on June 29, 2017, Plaintiff had no complaints of headaches or acute visual changes. *Id.* ¶ 17, Ex. A at DEF0789-91. Defendant

13

examined Plaintiff's eyes, and noted that his extraocular movement was intact, which again, indicated to Defendant that there was no sign of nerve damage. *Id.*, Ex. A at DEF0790.

Shortly thereafter, on July 6, 2017, Plaintiff was seen by an optometrist, Dr. Ottenbacher, who states that Plaintiff only complained of blurry vision for nearby objects (for which he was prescribed reading glasses) and moderate dryness in his left eye (for which he was prescribed Lacri-lube ointment to address the dryness). *Id.*, Ex. A at DEF0562; Decl. Ottenbacher ¶¶ 5-6. Dr. Gupta agrees that there was no need for Plaintiff to see another specialist, including an ophthalmologist. Gupta Decl. ¶ 18. Therefore, the Court finds that Plaintiff fails to show that there exists a dispute of material fact that Defendant was deliberately indifferent in his treatment of Plaintiff's eye-related complaints from December 2015 through June 2017. *Cf. Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination, prescribed contraindicated sedatives).

At most, the Court finds that Plaintiff's argument—that Defendant was deliberate indifferent by failing to refer him to an eye specialist and failing to prescribe effective medication—evidences a difference of medical opinion. Moreover, Plaintiff's conclusory allegation—that Defendant's course of treatment was medically unacceptable—is not supported by any medical evidence. Plaintiff's conclusory allegations unsupported by factual data are insufficient to defeat Defendant's motion for summary judgment. *See Toguchi*, 391 F.3d at 1058-60 (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff, and where there was no indication in the record that doctor was aware of a risk that plaintiff was suffering from Klonopin withdrawal; claim that doctor failed to conduct a differential diagnosis did not amount to more than negligence and claim that doctor failed to employ emergency treatment was conclusory).

Even if Plaintiff should have received different treatment for his medical needs, a difference of opinion as to the urgency and treatment of his medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See id.* at 1058, 1059-60; *Sanchez v. Vild*, 891

14

F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). Although the medical treatment Plaintiff received may not have been what he considered proper treatment, he presents no evidence that Defendant was deliberately indifferent to his serious medical needs. Thus, Plaintiff has failed to provide evidence regarding an essential element of his deliberate indifference claim against Defendant. Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendant's denial of Plaintiff's requests for a referral to an eye specialist and more adequate medication for his vision conditions other than over-the-counter eye drops amounted to deliberate indifference to his serious medical needs.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's deliberate indifference claim as a matter of law. *See Celotex*, 477 U.S. at 323. Therefore, Defendant's motion for summary judgment is GRANTED.[5] Dkt. 26.

### B. Punitive Damages Claim

Finally, the dismissal of Plaintiff's claim for punitive damages is in order, as punitive damages may be awarded in a section 1983 suit only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is no indication whatsoever that Defendant's alleged wrongdoing rose to this requisite high level of culpability.

Accordingly, Plaintiff's claim for punitive damages is DISMISSED.

### V. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Defendant's motion for summary judgment is GRANTED. Dkt. 26.
2. Plaintiff's claim for punitive damages is DISMISSED.
3. The Clerk of the Court shall terminate all pending motions, including Plaintiff's request for appointment of counsel (dkt. 1 at 13), and close the file.

---

[5] The Court's finding that Defendant is entitled to summary judgment as a matter of law as to Plaintiff's Eighth Amendment claim obviates the need to address Defendant's alternative arguments in his dispositive motion based on either the failure to exhaust administrative remedies, the mootness of the request for injunctive relief, or an entitlement to qualified immunity.

4. This Order terminates Docket No. 26.

IT IS SO ORDERED.

Dated: August 28, 2020

_____
YVONNE GONZALEZ ROGERS
United States District Judge